130 F.3d 884
 97 Cal. Daily Op. Serv. 9183, 97 Daily Journal
D.A.R. 14,835
LAPINE TECHNOLOGY CORPORATION, Plaintiff-Appellee,
v.
KYOCERA CORPORATION, Defendant-Appellant.
KYOCERA CORPORATION, Plaintiff-Appellant,
v.
PRUDENTIAL-BACHE TRADE SERVICES, INC., fdba Prudential-Bache
Trade Corporation; Prudential Capital & Investment
Services, Inc.; Lapine Holding Co.; Lapine Technology
Corporation, Defendants-Appellees.
LAPINE TECHNOLOGY CORPORATION, Plaintiff-Appellee,
v.
KYOCERA CORPORATION, Defendant-Appellant.
KYOCERA CORPORATION, Plaintiff-counter-claimant-Appellant,
v.
PRUDENTIAL-BACHE TRADE SERVICES, INC., fdba Prudential-Bache
Trade Corporation; Prudential Capital & Investment
Services, Inc.; Lapine Technology Corporation; Lapine
Holding Company Inc., Defendants-Counter-Claimants-Appellees.
KYOCERA CORPORATION, Plaintiff-Appellee,
v.
PRUDENTIAL-BACHE TRADE SERVICES, INC., fdba Prudential-Bache
Corporation; Prudential Capital & Investment
Services, Inc.; Lapine Technology
Corporation; Lapine Holding
Co., Defendants-Appellants.
 Nos. 96-15319, 96-15321, 96-16142, 96-16143, 96-16318.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 18, 1997.
Decided Dec. 9, 1997.
 
 James J. Brosnahan, Morrison & Foerster, San Francisco, California, and Shirley M. Hufstedler, Morrison & Foerster, Los Angeles, California, for appellant.
 Charles S. Treat and Maureen E. Mahoney, Latham & Watkins, San Francisco, California, for appellees.
 Keiichiro Sue, Matsuo & Kosugi, Tokyo, Japan, for amicus curiae Law Association for Asia and the Pacific.
 Bettina Redway, Sacramento, California, for amici curiae, California Manufacturers Association, Electronic Industries Association, Shaklee Corporation, International Electronics Manufacturers and Cnsumers of America, U.S. Borax, Inc., Mexinox, S.A. de C.V., New United Motor Manufacturing, Inc.
 Christopher E. Chenoweth, San Francisco, California, for amici curiae California Bankers Association, American Bankers Association, Bank Securities Association, Consumer Bankers Association, Bankers Roundtable.
 Erik Valgaeren, Stibbe Simont Monahan Duhot, Brussels, Belgium, for amici curiae Hans Van Houtte and Bernd Von Hoffman.
 Forrest Booth, Rice Fowler Booth & Banning, San Francisco, California, and Bruce Aitken, Aitken Irvin Lewin Berlin Vrooman & Cohn, Orange, California, for amicus curiae The Pro Trade Group.
 Paul Grossman, Paul, Hastings, Janofsky & Walker, Los Angeles, California, for amicus curiae California Employment Law Council.
 Appeals from the United States District Court for the Northern District of California; William A. Ingram, District Judge, Presiding. D.C. No. CV-87-20316-WAI, D.C. No. CV-91-20159-WAI.
 Before: KOZINSKI, MAYER,* and FERNANDEZ, Circuit Judges.
 FERNANDEZ, Circuit Judge:
 
 
 1
 Kyocera Corporation appeals the district court's judgment in favor of LaPine Technology Corporation, LaPine Holding Company, Inc. and Prudential-Bache Trade Services, Inc.[1] The district court determined that it could not review an arbitration award under a substantial evidence and error of law standard, even though that standard was part of the arbitration agreement made by the parties. The court, therefore, confirmed the arbitration award against Kyocera by using the much more deferential standard authorized in the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10-11. See Lapine Technology Corp. v. Kyocera Corp., 909 F.Supp. 697 (N.D.Cal.1995) (Lapine I ). We affirm in part and reverse and remand in part.
 
 BACKGROUND
 
 2
 In 1984, Kyocera, LaPine, and Prudential-Bache began a venture to manufacture and market computer disk drives. LaPine had a drive design, which it licensed to the manufacturer, Kyocera. Prudential-Bache provided financing for the venture: it would purchase Kyocera's entire output of drives and sell those drives to LaPine, which would then market them to its customers. However, that arrangement lasted for a relatively short time because LaPine's fortunes took a downward turn in 1986. The change in LaPine's financial condition set off a series of events that culminate in our decision today.
 
 
 3
 In late 1986, the parties began to negotiate a restructuring of their venture and reached an agreement in principle. On November 13, 1986, they memorialized their deal in a Definitive Agreement ("DA"). A revised DA, circulated on November 14, included as an exhibit the Amended Trading Agreement ("ATA"). The ATA eliminated Prudential-Bache's role as middleman, thus requiring Kyocera to sell drives directly to LaPine. Kyocera objected to that provision some time after the ATA was circulated. When Kyocera refused to comply with the ATA, LaPine gave notice of its claim of breach and then began the instant proceedings in the district court.
 
 
 4
 The district court granted Kyocera's motion to compel arbitration pursuant to § 8.10(d) of the DA. That arbitration clause provided as follows:
 
 
 5
 (d) Manner. A party desiring to submit a matter to arbitration shall give written notice to the other parties hereto.... The arbitrators shall decide the matters submitted based upon the evidence presented, the terms of this Agreement, the Agreement in Principle and the laws of the State of California. The arbitrators shall issue a written award which shall state the bases of the award and include detailed findings of fact and conclusions of law. The United States District Court for the Northern District of California may enter judgment upon any award, either by confirming the award or by vacating, modifying or correcting the award. The Court shall vacate, modify or correct any award: (i) based upon any of the grounds referred to in the Federal Arbitration Act, (ii) where the arbitrators' findings of fact are not supported by substantial evidence, or (iii) where the arbitrators' conclusions of law are erroneous.
 
 
 6
 The dispute was submitted to a panel of three arbitrators (the "Tribunal") for decision in accordance with a document entitled "Terms of Reference." That document provided, inter alia, that,
 
 
 7
 The decisions and awards of the Tribunal may be enforced by the judgment of the Court or may be vacated, modified or corrected by the Court (a) based upon any grounds referred to in the Act, or (b) where the Tribunal's findings of fact are not supported by substantial evidence, or (c) where the Tribunal's conclusions of law are erroneous.
 
 
 8
 The Tribunal issued its final decision on August 24, 1994 and on November 23, 1994, Kyocera made a Motion to Vacate, Modify and Correct the Arbitral Award. Kyocera based its motion on claims that: (1) the Tribunal's findings of fact were not supported by substantial evidence, (2) the Tribunal had made errors of law, and (3) there existed various statutory grounds for vacatur or modification under the FAA.[2] See 9 U.S.C. §§ 10, 11.
 
 
 9
 The district court denied Kyocera's motion to vacate. In doing so, the court held that it would not review the arbitration award for errors of law or fact as provided in the DA and Terms of Reference. Rather, it considered only the statutory grounds for vacatur and found none of them applicable in this case. Thus, the court denied vacatur, granted Claimants' motion to confirm, and subsequently entered judgment. It also awarded Claimants attorneys fees and disbursements for both the pre- and post-arbitration phases of the litigation. However, the district court denied Claimants' request for prejudgment interest on the attorneys fees and disbursements award. Kyocera appeals from the district court's judgment and its award of attorneys fees. Claimants cross-appeal the denial of prejudgment interest.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 10
 The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332 and we have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's decision to deny vacatur and to confirm the arbitration award. See Woods v. Saturn Distribution Corp., 78 F.3d 424, 427 (9th Cir.), cert. dismissed, --- U.S. ----, 117 S.Ct. 30, 135 L.Ed.2d 1123 (1996).
 
 DISCUSSION
 
 11
 This appeal boils down to one major issue: Is federal court review of an arbitration agreement necessarily limited to the grounds set forth in the FAA or can the court apply greater scrutiny, if the parties have so agreed? The district court answered "yes" to the first part of the question and "no" to the second. It said: "This court is satisfied that the parties may not by agreement alter by expansion the provisions for judicial review contained in the Federal Arbitration Act." Lapine I, 909 F.Supp. at 705. We do not agree with its answers.
 
 
 12
 It is beyond peradventure that in the absence of any contractual terms regarding judicial review, a federal court may vacate or modify an arbitration award only if that award is "completely irrational," exhibits a "manifest disregard of law," or otherwise falls within one of the grounds set forth in 9 U.S.C. §§ 10 or 11. Todd Shipyards Corp. v. Cunard Line, Ltd., 943 F.2d 1056, 1060 (9th Cir.1991) (citation omitted). The instant case does not, however, fall neatly within the contours of the usual rule. That is because the parties indisputably contracted for heightened judicial scrutiny of the arbitrators' award when they agreed that review would be for errors of fact or law.
 
 
 13
 We hold that we must honor that agreement. We must not disregard it by limiting our review to the FAA grounds. To locate the principle that animates our holding, one need not look very much further than the Supreme Court's decisions applying and interpreting the FAA. Those decisions make it clear that the primary purpose of the FAA is to ensure enforcement of private agreements to arbitrate, in accordance with the agreements' terms. As the Supreme Court said in Volt Info. Sciences v. Board of Trustees, 489 U.S. 468, 478-79, 109 S.Ct. 1248, 1255-56, 103 L.Ed.2d 488 (1989) (citations omitted):
 
 
 14
 In recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, we have held that the FAA preempts state laws which "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." But it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted.
 
 
 15
 That declaration recognized Congress's design " 'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate,' " id. at 474, 109 S.Ct. at 1253, and acknowledged that "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." Id. at 476, 109 S.Ct. at 1254 (emphasis added).
 
 
 16
 In keeping with those principles, the Court has enforced contract terms that have called for arbitration under rules other than those established by the FAA itself, see id. at 478, 109 S.Ct. at 1255; under agreements to arbitrate punitive damages despite contrary state law, see Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 55, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76 (1995); and under agreements limiting the scope of the issues submitted to arbitration. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 3354-55, 87 L.Ed.2d 444 (1985). In short, "arbitration is simply a matter of contract between the parties." First Options, 514 U.S. at 943, 115 S.Ct. at 1924. The FAA's purpose was to make arbitration agreements just as enforceable as other contracts; not less so, "not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270 (1967).
 
 
 17
 Following this guidance from the Supreme Court, the Fifth Circuit has held that federal courts have the authority, and, indeed, the obligation, to conduct heightened judicial review of an arbitration award in accordance with the parties' agreement. See Gateway Techs., Inc. v. MCI Telecomm. Corp., 64 F.3d 993, 996-97 (5th Cir.1995). As it wisely put it:
 
 
 18
 Because these parties contractually agreed to expand judicial review, their contractual provision supplements the FAA's default standard of review and allows for de novo review of issues of law embodied in the arbitration award.
 
 
 19
 The district court accordingly erred when it refused to review the "errors of law" de novo, opting instead to apply its specially crafted "harmless error standard." This choice apparently reflected the district court's unwillingness to enforce the parties' contract because "the parties have sacrificed the simplicity, informality, and expedition of arbitration on the altar of appellate review." Prudent or not, the contract expressly and unambiguously provides for review of "errors of law"; to interpret this phrase short of de novo review would render the language meaningless and would frustrate the mutual intent of the parties. When, as here, the parties agree contractually to subject an arbitration award to expanded judicial review, federal arbitration policy demands that the court conduct its review according to the terms of the arbitration contract.
 
 
 20
 Id. at 997 (footnote and citation omitted). And if substantial evidence and error of law review seems less efficient than the normal scope of arbitration review, that should not cause much pause because:
 
 
 21
 it nevertheless reduces the burden on the Court below that which would exist in the absence of any provision for arbitration. Whereas in an ordinary commercial litigation the Court would be required to decide all aspects of the dispute, here the Court is being asked only to review the arbitrators' findings for substantial evidence and legal validity. This is clearly a far less searching and time-consuming inquiry than a full trial.
 
 
 22
 Fils et Cables d'Acier de Lens v. Midland Metals Corp., 584 F.Supp. 240, 244 (S.D.N.Y.1984). Of course, an arbitration issue would not be in the federal courts at all were it not for the fact that they would have jurisdiction over and the obligation to decide the whole matter in the absence of arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983) (the FAA does not create an independent source of federal jurisdiction); Garrett v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 882, 883-84 (9th Cir.1993) (same). We recognize that agreeing to the scope of review by a court is not precisely the same as agreeing to the scope of the arbitration itself. Nevertheless, the standards against which the work of the arbitrator will be measured are inexorably intertwined with the arbitration's scope, affect its whole structure, and may even encourage the arbitrator to adhere to a high standard of decision making. Perhaps an arbitrator need not be a Rhadamanthus, neither need he be a Panjandrum. We perceive no sufficient reason to pay less respect to the review provision than we pay to the myriad of other agreements which the parties have been pleased to make.
 
 
 23
 Thus, we fully agree with the Fifth Circuit. Federal courts can expand their review of an arbitration award beyond the FAA's grounds, when (but only to the extent that) the parties have so agreed. To do otherwise would make hostility to arbitration agreements erumpent under the guise of deference to the arbitration concept. Historically, courts rather doubted that arbitral " 'tribunals possess adequate means of giving redress.' " Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 121 & n. 1, 44 S.Ct. 274, 276 & n. 1, 68 L.Ed. 582 (1924) (citation omitted). Therefore, they jealously guarded their own jurisdiction to decide cases. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219-20 n. 6, 105 S.Ct. 1238, 1242 n. 6, 84 L.Ed.2d 158 (1985). That led them to refuse to enforce parties' agreements to arbitrate, and the FAA was designed to end that resistance. Now courts are again asked to refuse to enforce parties' agreements, but this time they are asked to do so by jealously eschewing their own jurisdiction. That would turn the FAA on its head. It was enacted to ensure enforcement of arbitration in accordance with parties' agreements. See Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 271, 115 S.Ct. 834, 838, 130 L.Ed.2d 753 (1995). By confirming an award without the searching review that the parties have earlier agreed to, a court goes against the parties' wishes and does the opposite of what Congress intended. That is a result the Supreme Court has spurned, see First Options, 514 U.S. at 943, 115 S.Ct. at 1924; so too must we.
 
 
 24
 We recognize that a Seventh Circuit decision contains language which suggests that, if faced with the question we answer today, that court might reach a different result. In Chicago Typographical Union v. Chicago Sun-Times, Inc., 935 F.2d 1501, 1505 (7th Cir.1991), the court stated, "If the parties want, they can contract for an appellate arbitration panel to review the arbitrator's award. But they cannot contract for judicial review of that award; federal jurisdiction cannot be created by contract." The court, however, did not explain what had evoked that pronouncement, nor did it further explain the reasoning behind it. The opinion does not indicate that the parties attempted to confer appellate jurisdiction on the court, nor does it even indicate that the parties had asked for some exotic standard of review. If the court intended to refer to the FAA as a jurisdictional statute, it would have been negating the established principle that the FAA is a regulation of commerce rather than a limitation on or conferral of federal court jurisdiction. Cf. Allied-Bruce Terminix, 513 U.S. at 269, 115 S.Ct. at 838. Thus, it seems that the court's cryptic assertion about jurisdiction is dicta. If it is not, we simply do not agree with the holding. On the contrary, we hold that the district court erred when it decided that it could not expand judicial review of an arbitration award beyond the grounds set forth in the FAA to the more generous review for substantial evidence and errors of law agreed to by the parties.
 
 
 25
 We are also unpersuaded by Claimants' alternate argument that by agreeing in the DA to arbitrate in accordance with the Rules of International Chamber of Commerce, Kyocera gave up any right to judicial review. It is true that Article 24 of the Rules of Conciliation of the International Chamber of Commerce, to which Kyocera agreed in the DA, provides for finality of the arbitration award and waiver of judicial review. However, that article notwithstanding, the Terms of Reference, to which the Claimants, Kyocera, and the Tribunal all agreed and pursuant to which the arbitration was conducted, provided for judicial review in accordance with the terms of the DA. To the extent that they conflict with Article 24, the Terms of Reference control. See Western Employers Ins. Co. v. Jefferies & Co., Inc., 958 F.2d 258, (9th Cir.1992) (arbitration procedure must comply with submission agreement); see also Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir.1987). At any rate, the specific judicial review provisions override the general ICC provisions. See Cal. Civ.Code § 1859; National Ins. Underwriters v. Carter, 17 Cal.3d 380, 386, 551 P.2d 362, 366, 131 Cal.Rptr. 42, 46 (1976).
 
 
 26
 In fine, when Kyocera and LaPine agreed to submit disputes to arbitration, they did so on the condition that the federal district court would review the arbitrators' decisions for errors of fact and law. They did not agree to abide by an arbitral tribunal's erroneous decisions. The FAA does not prohibit that kind of agreement; it encourages it. When the district court refused to abide by the terms of the agreement and then confirmed the results of the arbitration, it violated the purposes of the FAA and denied Kyocera the benefit of its bargain.
 
 CONCLUSION
 
 27
 When parties are able to scry the possibility of future disputes, they may allow those to be resolved through the normal litigation process in court, or they may agree to remove them from that forum and resort to the use of an arbitral tribunal. When they do the latter, they may leave in place the limited court review provided by §§ 10 and 11 of the FAA, or they may agree to remove that insulation and subject the result to a more searching court review of the arbitral tribunal's decision, for example a review for substantial evidence and errors of law. In short, the FAA is not an apotropaion designed to avert overburdened court dockets; it is designed to avert interference with the contractual rights of the parties.
 
 
 28
 Therefore, we must reverse the district court's determination that it could not review the arbitral tribunal's decision on the standard agreed to by the parties, and remand this case for review of the decision by use of the agreed to standard.[3]
 
 
 29
 AFFIRMED in part, REVERSED and REMANDED in part. Kyocera shall recover its costs on appeal.
 
 
 30
 KOZINSKI, Circuit Judge, concurring.
 
 
 31
 While I join Judge Fernandez's opinion, I find the question presented closer than most. The Supreme Court cases on which the opinion relies are helpful, maj. op. at 888-889, but they don't get us all the way there. As Judge Mayer points out, they say that parties may set the time, place and manner of arbitration; none says that private parties may tell the federal courts how to conduct their business. In general, I do not believe parties may impose on the federal courts burdens and functions that Congress has withheld. A partial answer is that any case properly in district court under the Federal Arbitration Act must have an independent jurisdictional basis. See Garrett v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 882, 883 (9th Cir.1993). Thus, enforcing the arbitration agreement-even with enhanced judicial review-will consume far fewer judicial resources than if the case were given plenary adjudication. The rub is that the work the district court must perform under this arbitration clause is not a subset of what it would be doing if the case were brought directly under diversity or federal question jurisdiction. It's not just less work, it is different work. Nowhere has Congress authorized courts to review arbitral awards under the standard the parties here adopted.
 
 
 32
 Nevertheless, I conclude that we must enforce the arbitration agreement according to its terms. The review to which the parties have agreed is no different from that performed by the district courts in appeals from administrative agencies and bankruptcy courts, or on habeas corpus. I would call the case differently if the agreement provided that the district judge would review the award by flipping a coin or studying the entrails of a dead fowl. Given the strong policy of party empowerment embodied in the Arbitration Act, I see no reason why Congress would object to enforcement of this agreement. This is not quite an express congressional authorization but, given the Arbitration Act's policy, it's probably enough.
 
 MAYER, Circuit Judge, Dissenting:
 
 33
 Whether to arbitrate, what to arbitrate, how to arbitrate, and when to arbitrate are matters that parties may specify contractually. See Volt Info. Sciences v. Board of Trustees, 489 U.S. 468, 478-479, 109 S.Ct. 1248, 1255-1256, 103 L.Ed.2d 488 (1989). However, Kyocera cites no authority explicitly empowering litigants to dictate how an Article III court must review an arbitration decision. Absent this, they may not. Should parties desire more scrutiny than the Federal Arbitration Act, 9 U.S.C. §§ 10-11 (1994), authorizes courts to apply, "they can contract for an appellate arbitration panel to review the arbitrator's award[;] they cannot contract for judicial review of that award." Chicago Typographical Union v. Chicago Sun-Times, 935 F.2d 1501, 1505 (7th Cir.1991). I would affirm the district court's self-restraint.
 
 
 
 *
 United States Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 We refer to LaPine Technology and LaPine Holding collectively as "LaPine." We refer to LaPine and Prudential-Bache collectively as "Claimants" and use their own names when referring to them individually
 
 
 [2]
 Although Kyocera devotes its argument on appeal to the district court's determination regarding the first two grounds, it seeks to preserve the right to attack the court's decision on the third one, without presenting any argument or authorities regarding it. That, Kyocera cannot do. See United States v. Tisor, 96 F.3d 370, 376 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1012, 136 L.Ed.2d 889 (1997); Resorts Int'l, Inc. v. Lowenschuss, In re Lowenschuss, 67 F.3d, 1394, 1402 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996); Miller v. Fairchild Indus., Inc., 797 F.2d 727, 738 (9th Cir.1986). Thus, we AFFIRM the district court's resolution of the statutory grounds issues
 
 
 [3]
 Because we reverse and remand the decision to affirm the arbitral tribunal's determinations on the merits, we also reverse and remand in its entirety the district court's award of attorneys fees and disbursements. This, also, renders the Claimants' cross-appeal moot