341 F.3d 987
 KYOCERA CORPORATION, Plaintiff-Counter-Defendant-Appellant,
v.
PRUDENTIAL-BACHE TRADE SERVICES, INC., dba Prudential-Bache Trade Corporation; Prudential Capital & Investment Services, Inc.; Lapine Technology Corporation; Lapine Holding Co., Defendants-Counter-Claimants-Appellees.
LaPine Technology Corporation, Plaintiff-Appellee,
v.
Kyocera Corporation, Defendant-Appellant.
LaPine Technology Corporation, Plaintiff-Counter-Claim-defendant-Appellee.
v.
Kyocera Corporation, Defendant-Counter-Claimant-Plaintiff-Appellant,
v.
Prudential-Bache Trade Services, Inc., dba Prudential-Bache Trade Corporation; Prudential Capital & Investment Services, Inc., Defendants-Counter-Claimants-Appellees.
 No. 01-15630.
 No. 01-16528.
 No. 01-16394.
 No. 01-15653.
 No. 01-16392.
 No. 01-16182.
 United States Court of Appeals, Ninth Circuit.
 Submitted En Banc June 27, 2003.* — San Francisco, California.
 Filed August 29, 2003.
 
 Shirley M. Hufstedler, Morrison & Foerster LLP, Los Angeles, California; James F. McCabe and Angela L. Padilla, Morrison & Foerster LLP, San Francisco, California, for the plaintiff-counter-defendant-appellant.
 Charles S. Treat and Timothy P. Crudo, Latham & Watkins, San Francisco, California, Paul H. Dawes, Latham & Watkins, Menlo Park, CA, for the defendants-counter-claimants-appellees.
 Appeals from the United States District Court for the Northern District of California; William A. Ingram, Senior Judge, Presiding. D.C. Nos. CV-87-20316-WAI, CV-91-20159-WAI.
 Before: Mary M. Schroeder, Chief Judge, Stephen Reinhardt, Stephen S. Trott, Pamela Ann Rymer, Thomas G. Nelson, Michael Daly Hawkins, Sidney R. Thomas, Susan P. Graber, William A. Fletcher, Richard A. Paez, and Johnnie B. Rawlinson, Circuit Judges.
 Opinion by Judge Reinhardt; Separate Statement by Judge Rymer.
 OPINION
 REINHARDT, Circuit Judge:
 
 I. BACKGROUND
 
 1
 In 1984, Kyocera Corporation ("Kyocera"), Prudential-Bache Trade Corporation ("Prudential"), and the newly formed LaPine Technology Corporation ("LaPine") began a venture to produce and market computer disk drives. LaPine licensed its proprietary drive design to Kyocera, which manufactured the drives. Prudential's role was generally to stabilize the cash flow of the enterprise: in addition to financing LaPine's inventory and accounts receivable, Prudential purchased, through a subsidiary, the LaPine drives from Kyocera and resold the drives on credit to LaPine, which in turn marketed the drives to its customers.
 
 
 2
 By the summer of 1986, LaPine — which had never earned a profit — had fallen into serious managerial and financial difficulties. On August 13 and 21, 1986, Kyocera gave written notice that it considered LaPine and Prudential in default due to the failure to pay for delivered drives. Shortly thereafter, Kyocera, Prudential, and LaPine began discussions regarding LaPine's reorganization and a restructuring of the relationship among the three companies.
 
 
 3
 The parties differ on the terms of the final agreement that resulted from the ensuing exchanges. In October and November of 1986, both a general "Definitive Agreement" and a subsidiary, more detailed "Amended Trading Agreement" were prepared. The primary dispute arises out of one term of the "Amended Trading Agreement": LaPine and Prudential claim that all parties agreed that Prudential would no longer purchase drives from Kyocera and resell them to LaPine, and that LaPine would instead purchase drives directly from Kyocera; Kyocera maintains that it never approved any such limitation of Prudential's role. When Kyocera refused to execute the "Amended Trading Agreement" as presented by LaPine and Prudential, LaPine notified Kyocera that it considered Kyocera in breach of contract. On May 7, 1987, LaPine instituted proceedings in federal district court, seeking damages and an injunction compelling Kyocera to continue supplying drives under the alleged terms of the contract.
 
 
 4
 On September 2, 1987, the district court granted Kyocera's motion to compel arbitration, and a panel of three arbitrators was convened.[1] Arbitration proceeded in two phases. The arbitration panel first determined in "Phase I" that, under California law,[2] Kyocera had entered into a contract by accepting LaPine and Prudential's version of the "Amended Trading Agreement," which required Kyocera to sell drives directly to LaPine. Again applying California law, the arbitrators then determined in "Phase II" that Kyocera breached this contract and that the breach was the proximate cause of damage to LaPine. On August 25, 1994, the arbitrators issued their final decision, unanimously awarding LaPine and Prudential $243,133,881 in damages and prejudgment interest against Kyocera.[3]
 
 
 5
 Kyocera filed a motion in the district court to "Vacate, Modify and Correct the Arbitral Award." The motion relied on the arbitration clause of the parties' "Definitive Agreement,"[4] which stated that:
 
 
 6
 The arbitrators shall issue a written award which shall state the bases of the award and include detailed findings of fact and conclusions of law. The United States District Court for the Northern District of California may enter judgment upon any award, either by confirming the award or by vacating, modifying or correcting the award. The Court shall vacate, modify or correct any award: (i) based upon any of the grounds referred to in the Federal Arbitration Act, (ii) where the arbitrators' findings of fact are not supported by substantial evidence, or (iii) where the arbitrators' conclusions of law are erroneous.
 
 
 7
 Accordingly, Kyocera asserted that (i) there existed grounds for vacatur pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (1994), (ii) the arbitration panel's factual findings were unsupported by substantial evidence, and (iii) the panel made various errors of law. LaPine and Prudential, in turn, moved to confirm the panel's award.
 
 
 8
 The district court denied Kyocera's motion and granted the motion of LaPine and Prudential. Lapine Tech. Corp. v. Kyocera Corp., 909 F.Supp. 697 (N.D.Cal.1995). The court concluded that the Federal Arbitration Act granted federal courts the jurisdiction to review arbitration decisions only on certain enumerated grounds, and that private parties could not by contract enlarge this statutory standard of review. See id. at 705. The district court therefore evaluated Kyocera's claim only under the standard set forth in 9 U.S.C. §§ 10-11. Because the court found no basis for vacatur, modification, or correction under this standard, it denied Kyocera's motion to vacate, granted LaPine and Prudential's motion to confirm, and entered judgment.[5] See id. at 706-09.
 
 A. LaPine I
 
 9
 Kyocera timely appealed. It argued, almost exclusively, that the district court erred in applying only the Federal Arbitration Act standard, and not the broader contractual provisions for review. In just two short pages and two footnotes of its 77-page opening brief on appeal, Kyocera contended that it qualified for relief under the statutory standard of review. The only such claim argued at any length was Kyocera's claim under 9 U.S.C. § 10(a)(4), which permits vacatur "where the arbitrators exceeded their powers"; Kyocera argued that the arbitration panel "exceeded its powers" by granting an award based on legal errors when the parties had only empowered the panel to apply California law correctly. Kyocera also summarily asserted that the arbitration award was procured by "fraud or undue means" under 9 U.S.C. § 10(a)(1), because LaPine improperly induced it to agree to arbitration by asserting that an expanded judicial review provision would be enforceable.
 
 
 10
 A divided panel of this court reversed the district court's determination that it was bound to apply only the statutory grounds for review, holding that federal court review of an arbitration agreement is not necessarily limited to the standards set forth in the Federal Arbitration Act. See LaPine Tech. Corp. v. Kyocera Corp., 130 F.3d 884, 888 (9th Cir.1997) [hereinafter LaPine I]. Rather, the majority recognized that Supreme Court precedent required that private agreements to arbitrate be implemented on their own terms and according to their own procedural rules, and then extended that principle to provisions regarding the grounds on which federal courts may review arbitration proceedings. See id. The majority held that when parties
 
 
 11
 resort to the use of an arbitral tribunal[,]... they may leave in place the limited court review provided by §§ 10 and 11 of the FAA, or they may agree to remove that insulation and subject the result to a more searching court review of the arbitral tribunal's decision, for example a review for substantial evidence and errors of law.
 
 
 12
 Id. at 890. The majority then declined to review the district court's decision rejecting Kyocera's arguments under the statutory standard.[6] Therefore, although we affirmed the district court's determination that Kyocera presented no basis for modifying the arbitral award on statutory grounds, id. at 887 n. 2, we remanded to allow the district court to apply the parties' contractually expanded standard of review of unsupported factual findings or errors of law,[7] id. at 891. No party requested en banc rehearing of our decision.
 
 
 13
 Judge Kozinski provided the deciding vote in LaPine I, although he noted in his tie-breaking concurrence that the question presented was "closer than most." Id. at 891 (Kozinski, J., concurring). He recognized that although the Supreme Court cases "say that parties may set the time, place and manner of arbitration[,] none says that private parties may tell the federal courts how to conduct their business." Id. He further acknowledged that "[n]owhere has Congress authorized courts to review arbitral awards under the standard the parties here adopted." Id. Nevertheless, despite the fact that the private parties' agreed-upon standard of review was neither authorized by Congress nor compelled by the Supreme Court, Judge Kozinski concluded that the "supported by substantial evidence or erroneous legal conclusion" standard was sufficiently similar to the standard used in reviewing administrative and bankruptcy decisions, and the standard used in reviewing state court decisions on habeas corpus, to permit the district court to apply the contractual agreement's standard of review without difficulty. His decision would have been different, he stated, "if the agreement provided that the district judge would review the award by flipping a coin or studying the entrails of a dead fowl." Id.
 
 
 14
 Judge Mayer dissented.[8] He stated simply and clearly that:
 
 
 15
 [w]hether to arbitrate, what to arbitrate, how to arbitrate, and when to arbitrate are matters that parties may specify contractually. See Volt Info. [Scis. Inc. v. Bd.] of Trustees, [489 U.S. 468, 478-79, 109 S.Ct. 1248, 103 L.Ed.2d 488] (1989). However, Kyocera cites no authority explicitly empowering litigants to dictate how an Article III court must review an arbitration decision. Absent this, they may not. Should parties desire more scrutiny than the Federal Arbitration Act, 9 U.S.C. §§ 10-11 (1994), authorizes courts to apply, "they can contract for an appellate arbitration panel to review the arbitrator's award[;] they cannot contract for judicial review of that award." Chicago Typographical Union v. Chicago Sun-Times[, Inc.], 935 F.2d 1501, 1505 (7th Cir.1991). I would affirm the district court's self-restraint.
 
 
 16
 Id. (Mayer, J., dissenting).
 
 B. LaPine II
 
 17
 Given that LaPine I affirmed the district court's application of the statutory grounds for review, the court on remand reviewed the arbitration decision according to the non-statutory standards specified in § 8.10 of the "Definitive Agreement," addressing each arbitration phase separately. On April 4, 2000, the district court confirmed the arbitration panel's "Phase I" decision on contract formation. See Lapine Tech. Corp. v. Kyocera Corp., 2000 WL 765556 (N.D.Cal.2000) (unpublished order). The court held that the arbitrators' "conclusions are not only legally sound but they are amply supported by the undisputed facts." Id. at *13.
 
 
 18
 On October 2, 2000, the district court similarly confirmed most of the arbitrators' "Phase II" decision on contract breach and damages. However, the court "vacated" Finding of Fact number 135 — which recited that LaPine achieved an operating profit in 1987 when in fact the accounting record showed an operating loss for that year — and "remanded" the case to the arbitral panel "for its consideration as to the effect, if any, of the vacation of Finding of Fact 135 on its damage award."
 
 
 19
 Although one panel member was deceased, the remaining two members of the arbitral panel issued a letter stating that the vacatur of Finding of Fact 135 had no effect on the damages award, because the panel's valuation methodology did not rely on actual profit figures for that year. On March 6, 2001, the district court confirmed the arbitrators' "Phase II" award, and on March 9, the court entered judgment in favor of Prudential and LaPine.[9] Again, Kyocera timely appealed.
 
 
 20
 A three-judge panel of this court unanimously affirmed the district court's confirmation of the arbitral panel's award. Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 299 F.3d 769 (9th Cir.2002) [hereinafter LaPine II]. The panel first rejected Kyocera's argument that the district court, upon concluding that one finding of the arbitral panel was unsubstantiated, was required to vacate the entire award; rather, it found that the court acted properly under its authority to "modify or correct" an award. Id. at 779. It then held that the district court did not err in remanding to the arbitral panel to allow the arbitrators to clarify and interpret, rather than reexamine the merits of, the award. Id. at 780.
 
 
 21
 LaPine II then turned to the merits of the arbitral panel's decision and affirmed the district court's assessment of the arbitrators' factual findings and legal conclusions. Applying California law, LaPine II held that on the record before it, the arbitrators did not err in finding that Kyocera entered into a contract for the direct sale of drives to LaPine, that Kyocera was not excused from performance under the contract, that Kyocera failed to perform its contractual obligations, and that this breach foreseeably caused LaPine damage; it also held that the arbitral panel did not err in calculating the amount of damages required to compensate LaPine for the breach. Id. at 780-93. In addition, the LaPine II panel noted that because the LaPine I panel found that Kyocera had waived any challenge to the district court's decision on statutory grounds, Kyocera was barred in LaPine II by the law of the case from contesting the arbitral panel's decision on the grounds enumerated in the Federal Arbitration Act. Id. at 793.[10]
 
 
 22
 Kyocera timely filed a request for rehearing en banc, and on December 17, 2002, we granted that request.[11] We ordered and received supplemental briefing devoted entirely to the LaPine I issue of private parties' power to dictate the grounds for judicial review of an arbitration award, and the ramifications thereof. We now affirm the district court's confirmation of the arbitral panel's award. In so doing, we correct the law of the circuit regarding the proper standard for review of arbitral decisions under the Federal Arbitration Act.
 
 II. DISCUSSION
 
 23
 Under the broad standard of review approved in LaPine I, Kyocera presses at least twenty-five distinct grounds for vacating or correcting the decision of the arbitral panel due to alleged errors of law and unsubstantiated findings of fact. To decide a number of these issues — including whether it is reasonable for estoppel purposes to rely on an agreement not yet approved by a board of directors when the agreement takes effect only on board approval; whether an injured entity properly mitigates its damages when it refuses partial relief provided pursuant to an order of the court; and whether damages for the destroyed business value of a dissolved business may be calculated as of any date other than the date of contractual breach — would require a detailed examination of California law and the application of that law to a factual record spanning several years and many thousands of pages.
 
 
 24
 In this case, we need not speculate as to whether the arbitration panel properly applied complex California contract law to a complex factual dispute, because we conclude that Congress has explicitly prescribed a much narrower role for federal courts reviewing arbitral decisions. The Federal Arbitration Act, 9 U.S.C. §§ 1-16, enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award. Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard. Because the Constitution reserves to Congress the power to determine the standards by which federal courts render decisions, and because Congress has specified the exclusive standard by which federal courts may review an arbitrator's decision, we hold that private parties may not contractually impose their own standard on the courts. We therefore review the arbitral panel's determination only on grounds authorized by the statute, and affirm the confirmation of the arbitration award.
 
 
 25
 A. Our Decision to Review the LaPine I Issue
 
 
 26
 Before addressing the merits of the matter, we briefly lay to rest any concerns regarding our authority, sitting as the en banc court, to decide the standard of review issue. As we recently stated in Summerlin v. Stewart, 309 F.3d 1193, 1193 (9th Cir.2002):
 
 
 27
 when a case is heard or reheard en banc, the en banc [court] assumes jurisdiction over the entire case, see 28 U.S.C. § 46(c), regardless of the issue or issues that may have caused any member of the Court to vote to hear the case en banc. If the Court votes to hear or rehear a case en banc, the en banc [court] may, in its discretion, choose to limit the issues it considers. See, e.g., Rand v. Rowland, 154 F.3d 952, 954 n. 1 (9th Cir.1998); United States v. Perez, 116 F.3d 840, 843 n. 2 (9th Cir.1997). However, the en banc [court] is under no obligation to do so.
 
 
 28
 Accordingly, it is clear that because we have assumed jurisdiction over the case as a whole, we have the authority to decide the standard of review issue.
 
 
 29
 Our authority as an en banc court to decide the issue is not lessened by the fact that an earlier three-judge panel has issued a decision on the matter. It is clearly established that the final judgment of the LaPine I panel, though law of the case and therefore binding on subsequent three-judge panels of this circuit, does not bind the en banc court. See, e.g., Jeffries v. Wood, 114 F.3d 1484, 1492 (9th Cir.1997) (en banc); id. at 1512 n. 19 (Kozinski, J., dissenting); Watkins v. United States Army, 875 F.2d 699, 704 n. 8 (9th Cir.1989) (en banc).
 
 
 30
 It is also appropriate for this en banc court to decide the issue of the grounds on which federal courts may review arbitration decisions. The issue was squarely presented, extensively briefed by the parties, and explicitly addressed both by the district court and by a panel of our court. See Lapine, 909 F.Supp. at 705; LaPine I, 130 F.3d at 888-90. Additional briefing was ordered by and submitted to this en banc court on that question. The issue is dispositive of the case. The fact that we might instead decide on other grounds — for example, by reviewing each of the asserted errors of state law and allegedly unsubstantiated determinations of fact — whether the judgment affirmed in LaPine II is correct does not render our choice to decide the standard of review issue inappropriate. Indeed, it might prove not only appropriate but necessary for us to do so. Were we to bypass the standard-of-review issue initially, in favor of conducting the more extensive and burdensome factual and legal review required to resolve the case on non-statutory grounds, and were we to find that Kyocera should prevail on one of those grounds, we would nevertheless have to hold in favor of LaPine on the basis on which we now decide the case: that the contractually provided non-statutory grounds cannot serve to expand the standard of review that Congress has established.
 
 
 31
 In sum, two questions are properly before us, and we must determine the order in which we address them. When we are confronted with two properly presented issues, each of which might be dispositive, we may: (1) decide question 1 first, and depending on the outcome, then decide question 2; or (2) decide question 2 first, and depending on the outcome, then decide question 1. In most cases, we have unlimited discretion to choose which path to take.[12] The two questions before us are: (1) whether the statutory standard of review may be expanded by contract, and (2) whether the arbitration panel arrived at erroneous legal conclusions and factual findings; either question might be dispositive. Question one, however, may greatly narrow the issues we need decide; moreover, we believe it to be more worthy of resolution by the court sitting en banc. Finally, for what it's worth, in the ordinary course of legal analysis, we would address the standard of review (question one) first. Accordingly, although we could appropriately consider either of the two questions first, we choose to begin with the proper scope of review under the Federal Arbitration Act.
 
 
 32
 As a final threshold matter, we acknowledge that the judgment of the LaPine I panel became final on December 31, 1997, and despite the fact that no party requested an en banc rehearing, we recognize that we could have taken the case en banc to resolve this issue at that time, before the phase of the litigation culminating in LaPine II. However, the fact that the court did not in 1998 vote on whether to resolve the issue en banc does not preclude our review now.[13] Whether private parties may impose on a federal court a standard of review beyond that approved by Congress remains a "question of exceptional importance," FED. R. A PP. P. 35(a)(2), the answer to which may well affect large numbers of parties with critical contractual and statutory rights and billions of dollars at stake.[14] Indeed, although Kyocera cites LaPine I's purported notoriety as a reason to avoid reaching the issue in this case, we believe that the prospect that others may rely on an erroneous decision militates strongly in favor of correcting any error sooner, rather than later.
 
 
 33
 The Supreme Court recently reached a similar conclusion when, in holding the Texas anti-sodomy statute unconstitutional in Lawrence v. Texas, ___ U.S. ___, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), it decided to rely on the due process clause, rather than the equal protection clause, and thus to overrule Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). One of the reasons that it chose the course it did was to enable it to eliminate erroneous precedent. Although it is regrettable that the parties in the instant case may unnecessarily have expended time and resources litigating issues not properly before a federal court, the inconvenience to these parties cannot prevent us from correcting a legal error of exceptional importance to future contracting parties and litigants within this circuit.
 
 B. The Grounds for Review
 
 34
 We now determine whether our decision in LaPine I, allowing private parties to impose on the federal courts a broader standard of review than the grounds authorized by statute, constitutes such an error. We begin with the text of the governing statute, the Federal Arbitration Act.
 
 
 35
 The Act states that if a party seeks a judicial order confirming an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9 (emphasis added). Under the statute, "confirmation is required even in the face of erroneous findings of fact or misinterpretations of law." French v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 784 F.2d 902, 906 (9th Cir.1986) (internal quotation marks omitted). Rather, § 10 permits vacatur only:
 
 
 36
 (1) where the award was procured by corruption, fraud, or undue means;
 
 
 37
 (2) where there was evident partiality or corruption in the arbitrators, or either of them;
 
 
 38
 (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
 
 
 39
 (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
 
 
 40
 9 U.S.C. § 10(a) (emphasis added). We have held that arbitrators "exceed their powers" in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is "completely irrational," French, 784 F.2d at 906, or exhibits a "manifest disregard of law," Todd Shipyards Corp. v. Cunard Line, Ltd., 943 F.2d 1056, 1059-60 (9th Cir.1991). See also G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d 1096, 1105-06 (9th Cir.2003) (discussing the standard).
 
 
 41
 If vacatur is not warranted, section 11 allows a court to modify or correct an award:
 
 
 42
 (a) [w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award[;]
 
 
 43
 (b) [w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted[; or]
 
 
 44
 (c) [w]here the award is imperfect in matter of form not affecting the merits of the controversy.
 
 
 45
 9 U.S.C. § 11 (emphasis added).
 
 
 46
 In sum, the Federal Arbitration Act allows a federal court to correct a technical error, to strike all or a portion of an award pertaining to an issue not at all subject to arbitration, and to vacate an award that evidences affirmative misconduct in the arbitral process or the final result or that is completely irrational or exhibits a manifest disregard for the law. These grounds afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures.
 
 
 47
 Congress had good reason to preclude more expansive federal court review. Arbitration is a dispute resolution process designed, at least in theory, to respond to the wishes of the parties more flexibly and expeditiously than the federal courts' uniform rules of procedure allow. Proponents of arbitration cite its potential for speed and informality, see INT'L CT. OF ARB., INTRODUCTION TO ARBITRATION, at http:// www.iccwbo.org/court/english/arbitration/introduction.asp (visited June 30, 2003) (listing "speed and economy" among the "advantages of arbitration"); Lee Goldman, Contractually Expanded Review of Arbitration Awards, 8 HARV. NEGOT. L. REV. 171, 171 (Spring 2003) ("[A]rbitration can be faster, cheaper and more private than litigation."); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (noting "the simplicity, informality, and expedition of arbitration") — attributes not normally associated with federal trials. Broad judicial review of arbitration decisions could well jeopardize the very benefits of arbitration, rendering informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process.[15] Congress's decision to permit sophisticated parties to trade the greater certainty of correct legal decisions by federal courts for the speed and flexibility of arbitration determinations is a reasonable legislative judgment that we have no authority to reject.
 
 
 48
 Despite Congress's reasonable decision to adopt a narrow standard for judicial review of arbitration decisions, and despite the fact that Congress nowhere intimated that the federal courts were authorized to apply any other standard, the LaPine I panel concluded that private parties may contract for a more expansive (or less deferential) standard of review. The Third and Fifth Circuits agree with this conclusion.[16] See Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287 (3d Cir.2001) (citing LaPine I) (cert. denied, 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 423 (2001)); Gateway Techs., Inc. v. MCI Telecomms. Corp., 64 F.3d 993 (5th Cir.1995). These circuits generally emphasize that the purpose of the Federal Arbitration Act is to enforce the terms of private arbitration agreements, including terms specifying the scope of review of arbitration decisions. More specifically, these circuits find support for upholding the parties' contractual choice of grounds for review in Volt Information Sciences v. Board of Trustees, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). In Volt, the Supreme Court determined that "[j]ust as[private parties] may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted." Id. at 479, 109 S.Ct. 1248. The circuits mentioned above would expand Volt so as to provide that, just as the Federal Arbitration Act's default rules for how arbitration is to be conducted may be superceded by private contract, see id. at 476-77, 479, 109 S.Ct. 1248, so too may the Act's statutory standards governing federal court review, see 9 U.S.C. §§ 10-11, be superseded by private contract.
 
 
 49
 Three circuits appear to reject the proposition that private parties may dictate how federal courts shall conduct their proceedings. The Tenth Circuit has directly held that private parties may not contract for a standard of review more expansive than that stated in the Federal Arbitration Act. See Bowen v. Amoco Pipeline Co., 254 F.3d 925 (10th Cir.2001). In a decision construing section 301 of the Taft-Hartley Act but "look[ing] to" the Federal Arbitration Act for guidance, the Seventh Circuit held:
 
 
 50
 Federal courts do not review the soundness of arbitration awards.... If the parties want, they can contract for an appellate arbitration panel to review the arbitrator's award. But they cannot contract for judicial review of that award; federal jurisdiction cannot be created by contract. Unless the award was procured by fraud, or the arbitrator had a serious conflict of interest — circumstances that invalidate the contractual commitment to abide by the arbitrator's result — his interpretation of the contract binds the court asked to enforce the award or set it aside. The court is forbidden to substitute its own interpretation even if convinced that the arbitrator's interpretation was not only wrong, but plainly wrong.
 
 
 51
 Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc., 935 F.2d 1501, 1504-05 (7th Cir.1991). Finally, after reviewing the circuit split, and after reciting almost in toto Judge Mayer's LaPine I dissent, the Eighth Circuit strongly suggested that parties may not contract for expanded judicial review of an arbitration award, but ultimately resolved the case on other grounds. See UHC Mgmt. Co. v. Computer Scis. Corp., 148 F.3d 992 (8th Cir.1998).
 
 
 52
 These three circuits distinguished Volt's holding that private parties' contractual agreements can alter the form and substance of the arbitration proceeding itself — a holding not contested here — from the question whether such agreements may alter statutorily prescribed federal court review of the proceeding. On the latter question, the Tenth Circuit found nothing to indicate that the Federal Arbitration Act permitted federal courts to adopt differing standards of review to be established in separate agreements entered into by private parties. Furthermore, it found that private parties simply had no authority to expand the scope of review mandated by Congress for federal courts asked to confirm or vacate arbitration awards. Finally, it found that permitting expanded judicial review of arbitral decisions would undermine the policy behind the Act itself, because expanded judicial review of arbitral awards would compromise the simplicity that purportedly makes arbitration attractive. See Bowen, 254 F.3d at 935-36 & n. 7 (citing comments to similar effect by the drafters of the Revised Uniform Arbitration Act).
 
 
 53
 We agree with the Seventh, Eighth, and Tenth Circuits that private parties have no power to determine the rules by which federal courts proceed, especially when Congress has explicitly prescribed those standards. Pursuant to Volt, parties have complete freedom to contractually modify the arbitration process by designing whatever procedures and systems they think will best meet their needs — including review by one or more appellate arbitration panels. Once a case reaches the federal courts, however, the private arbitration process is complete, and because Congress has specified standards for confirming an arbitration award, federal courts must act pursuant to those standards and no others. Private parties' freedom to fashion their own arbitration process has no bearing whatsoever on their inability to amend the statutorily prescribed standards governing federal court review. Even when Congress is silent on the matter, private parties lack the power to dictate how the federal courts conduct the business of resolving disputes. See Worth v. Tyer, 276 F.3d 249, 262 n. 4 (7th Cir.2001) ("However, the court, not the parties, must determine the standard of review...."); K & T Enters., Inc. v. Zurich Ins. Co., 97 F.3d 171, 175 (6th Cir.1996) ("The parties, however, cannot determine this court's standard of review by agreement. Such a determination remains for this court to make for itself."); United States v. Vontsteen, 950 F.2d 1086, 1091 (5th Cir.1992) ("The parties' failure to brief and argue properly the appropriate standard may lead the court to choose the wrong standard. But no party has the power to control our standard of review."). A fortiori, private parties lack the power to dictate a broad standard of review when Congress has specifically prescribed a narrower standard.
 
 
 54
 We therefore overrule LaPine I, affirm the district court's 1995 conclusion, and hold that a federal court may only review an arbitral decision on the grounds set forth in the Federal Arbitration Act. Private parties have no power to alter or expand those grounds, and any contractual provision purporting to do so is, accordingly, legally unenforceable.
 
 C. Severability
 
 55
 We next consider whether the invalidity of the parties' expanded standard-of-review provision renders the entire arbitration clause unenforceable.[17] Kyocera argues that federal court review on the basis of the expanded terms of section 8.10(d)(ii)-(iii) of the "Definitive Agreement" was integral to any agreement, and that it would never have agreed to arbitrate at all if expansive review were precluded. Thus, it asserts that the entire arbitration clause should be invalidated and the parties returned to the 1987 status quo. We find it more appropriate in this case, however, simply to sever the offending terms from a dispute resolution provision that is otherwise valid.
 
 
 56
 The parties agree that the severability of particular terms of an agreement — here, the standard-of-review provision of section 8.10 — is a question of state law. See, e.g., Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1210 (9th Cir.1998) ("In construing an arbitration agreement, courts must `apply ordinary state-law principles that govern the formation of contracts.'" (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995))). A recent opinion of the California Supreme Court controls our disposition here.
 
 
 57
 In Little v. Auto Stiegler, Inc., 29 Cal.4th 1064, 130 Cal.Rptr.2d 892, 63 P.3d 979 (2003), petition for cert. filed, 71 U.S.L.W. 3751 (U.S. May 22, 2003) (No. 02-1720), the California Supreme Court considered a contract in which, as part of the overall arbitration agreement, the parties contracted for appellate arbitral review of an arbitration panel's award. The California Supreme Court held that the appellate review term was illegal, and — as is relevant for our purposes here — then held it to be severable from the remainder of the arbitration clause. Id. at 1074-76, 63 P.3d 979. The court explained that:
 
 
 58
 "[i]f the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate."
 
 
 59
 Id. at 1074, 63 P.3d 979(quoting Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 124, 99 Cal.Rptr.2d 745, 6 P.3d 669, 696 (2000)). That is, if unenforceable and enforceable contractual provisions are integrated and interdependent, the entire integrated portion must be stricken; otherwise, the offending terms may be severed. Cf. Graham Oil Co. v. ARCO Prods. Co., 43 F.3d 1244, 1248-49 (9th Cir.1995) (applying federal law).
 
 
 60
 In determining whether an illegal provision may be severed, the California Supreme Court explained that we must also look to the overall "interests of justice"; more specifically, courts should not allow a party to "gain[] undeserved benefit or suffer[] undeserved detriment as a result of voiding the entire agreement — particularly when there has been full or partial performance of the contract." Little, 29 Cal.4th at 1074, 130 Cal.Rptr.2d 892, 63 P.3d at 985 (internal quotation marks omitted). In this context, an earlier California Supreme Court case cited with approval an appellate decision severing, after an arbitration had been conducted, only the illegal contractual terms governing the review of the otherwise valid arbitration award. See Armendariz, 24 Cal.4th at 124, 99 Cal. Rptr.2d 745, 6 P.3d at 696(citing Saika v. Gold, 49 Cal.App.4th 1074, 1082, 56 Cal. Rptr.2d 922 (Cal.App.1996)); see also Oakland-Alameda County Coliseum Auth. v. CC Partners, 101 Cal.App.4th 635, 646-47, 124 Cal.Rptr.2d 363 (Cal.App.2002) (severing an invalid expanded-review clause from the remainder of an arbitration agreement, in part because a valid arbitration had already occurred and equity weighed in favor of preserving the valid arbitration by severing the invalid review clause).
 
 
 61
 Here, as in Little, we find that the unlawful expanded scope-of-review terms should be severed from the remainder of the arbitration clause. As in Little, "no contract reformation is required — the offending provision can be severed and the rest of the arbitration agreement left intact." Little, 29 Cal.4th at 1075, 130 Cal. Rptr.2d 892, 63 P.3d at 986. As in Little, the flaw manifest in the terms of appellate review does not permeate any other portion of the arbitration clause, and the review provisions are not interdependent with any other. We also note that the Little court severed a term providing for arbitral review of an arbitration award; if internal arbitral review was not sufficiently central to the purpose of an arbitration process to defeat severability, then surely the external scope of judicial review is not sufficiently central to the arbitration clause to defeat severability. Cf. Armendariz, 24 Cal.4th at 127, 6 P.3d at 698 (approving severance in two appellate cases in which illegality "was confined to single provisions regarding the rights of the parties after an arbitration award was made, not a provision affecting the scope of the arbitration. As such, the unconscionability could be cured by severing the unlawful provisions" (emphasis added)). Although Kyocera asserts that the potential for expansive appellate review was critical to the entire agreement, its briefs cite absolutely no evidence that supports this assertion. Moreover, Kyocera "would gain an undeserved benefit if we were to find the whole of the parties' arbitration agreement invalid [due to an invalid expanded review clause] when the arbitration itself suffered from no infirmity." CC Partners, 101 Cal.App.4th at 647, 124 Cal. Rptr.2d 363. Under the circumstances, we find that the offending clauses must, in the interests of justice, be severed from the remainder of the contract.
 
 
 62
 D. Review Under the Federal Arbitration Act Standards
 
 
 63
 With the severance of the expanded standard of review, we determine whether there is cause for vacatur, modification, or correction of the arbitral award as set forth in 9 U.S.C. §§ 10-11. Kyocera's argument that cause for vacatur exists under the statutory standard is, at best, flimsy. LaPine I apparently found this argument with respect to the statutory standard to be waived; LaPine II considered itself bound by this conclusion as law of the case. See LaPine I, 130 F.3d at 887 n. 2; LaPine II, 299 F.3d at 793. Because the law of the case does not bind an en banc court, see supra p. 993-94, we note Kyocera's cursory treatment of the argument, but review and dispose of Kyocera's contentions on the merits. We conclude that the district court was correct in holding that Kyocera has presented no valid ground for vacating, modifying, or correcting the arbitral award under the statutory — and only proper — standard of review. Accordingly, we affirm the district court's initial decision to confirm the arbitral award.
 
 
 64
 Although Kyocera asserts that it has "preserved" its arguments regarding purported violations of § 10(a)(1) and (a)(3) by reciting the statutory standard in its initial appellate brief, the only ground on which it advances any significant argument is that the arbitrators "exceeded their powers" under § 10(a)(4) by rendering a decision that was erroneous as a matter of law. Kyocera contends that because the parties bound the arbitrators to "decide the matters submitted based upon the evidence presented, the terms of this Agreement... and the laws of the State of California," a decision premised on unsubstantiated facts or legal conclusions that constitute errors of California law "exceeds the power" granted to the arbitrators.
 
 
 65
 This argument is in reality simply a recasting of Kyocera's arguments that we should permit expanded review of legal and factual errors — an argument that we have already rejected. Kyocera asserts that under its agreement, errors of law and fact are beyond the arbitrators' authority. Yet it is clear that the "exceeded their powers" clause of § 10(a)(4) does not encompass Kyocera's claims; the clause provides for vacatur only when arbitrators purport to exercise powers that the parties did not intend them to possess or otherwise display a manifest disregard for the law. The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4).
 
 
 66
 Kyocera also urges that the arbitration award should be vacated because it was procured by "fraud[] or undue means" under § 10(a)(1). Here, Kyocera's argument is that LaPine improperly induced it to agree to the arbitration by asserting that the expanded judicial review provision would be enforceable. As the district court concluded, this is not the type of inducement that allows an award to be vacated. Each side was in as good (or bad) a position to evaluate the prospects that a final judicial ruling on the question would uphold the expanded review authority. Because Kyocera presents no evidence that the arbitrators' lengthy and considered decision contains or was based on any conduct that approaches the type that warrants vacatur under the Federal Arbitration Act, we hold that the district court did not err in confirming the award.[18]
 
 III. CONCLUSION
 
 67
 Private parties have no authority to dictate the manner in which the federal courts conduct judicial proceedings. That power is reserved to Congress — and when Congress is silent on the issue, the courts govern themselves. Here, because Congress has determined that federal courts are to review arbitration awards only for certain errors, the parties are powerless to select a different standard of review — whether that standard entails review by seeking facts unsupported by substantial evidence and errors of law or by "flipping a coin or studying the entrails of a dead fowl." LaPine I, 130 F.3d at 891 (Kozinski, J., concurring). Private parties may design an arbitration process as they wish, but once an award is final for the purposes of the arbitration process, Congress has determined how the federal courts are to treat that award. We hold that the contractual provisions in this case providing for federal court review on grounds other than those set forth in the Federal Arbitration Act are invalid and severable. We further hold that Kyocera has shown no cause for relief under the standard provided in the Federal Arbitration Act. We therefore reinstate the earlier decision of the United States District Court for the Northern District of California, see 909 F.Supp. 697, vacate the opinions in LaPine I and LaPine II, and return appeal Nos. 01-16182, 01-16528, 01-16392, and 01-16394 to the LaPine II panel for a determination of attorney fees, disbursements, and interest consistent with this opinion.
 
 
 68
 AFFIRMED in part, VACATED in part, and REMANDED in part.
 
 
 
 Notes:
 
 
 *
 The court finds this case suitable for decision without oral argument. FED. R. APP. P. 34(a)(2)
 
 
 [1]
 Arbitration proceeded pursuant to § 8.10 of the "Definitive Agreement." No party challenges the fact that all parties intended this section to govern resolution of disputes among the parties
 
 
 [2]
 Section 8.10(d) of the "Definitive Agreement" provides that "[t]he arbitrators shall decide the matters submitted based upon the evidence presented, the terms of this Agreement, the Agreement in Principle and the laws of the State of California."
 
 
 [3]
 This total included a setoff of $10,595,158 that LaPine owed Kyocera for lapsed payments on delivered drives. The panel also awarded $14,500,000 in attorney fees and costs to LaPine and Prudential
 
 
 [4]
 A "Terms of Reference" document, which all parties agreed would govern the arbitration proceedings, likewise provided that:
 The decisions and awards of the Tribunal may be enforced by the judgment of the Court or may be vacated, modified or corrected by the Court (a) based upon any grounds referred to in the Act, or (b) where the Tribunal's findings of fact are not supported by substantial evidence, or (c) where the Tribunal's conclusions of law are erroneous.
 
 
 [5]
 The court also awarded attorney fees and disbursements for the pre- and post-arbitration phases of the litigation, but denied pre-judgment interest on the fees and disbursements award. LaPine and Prudential cross-appealed the denial of prejudgment interest
 
 
 [6]
 With regard to Kyocera's arguments on statutory grounds, the majority found that Kyocera "seeks to preserve the right to attack the [district] court's decision ..., without presenting any argument or authorities regarding it. That, Kyocera cannot do. Thus, we AFFIRM the district court's resolution of the statutory grounds issues."LaPine I, 130 F.3d at 887 n. 2 (internal citations omitted).
 
 
 [7]
 Because we reversed and remanded the district court's decision to affirm the arbitration panel's award on the merits, we also reversed and remanded the district court's award of attorney fees and disbursementsSee id. at 891 n. 3.
 
 
 [8]
 Judge Haldane Robert Mayer, who became Chief Judge of the U.S. Court of Appeals for the Federal Circuit two weeks after the opinion was filed, but was a member of that court prior to that time, sat by designation
 
 
 [9]
 The district court also granted Prudential and LaPine's motion to recover attorney fees and disbursements for pre-arbitration and post-arbitration proceedings in the district court, plus prejudgment interest through April 26, 2001 (the date on which judgment was entered), on both awards
 
 
 [10]
 LaPine II also affirmed the district court's award of attorney fees and disbursements and its calculation of the applicable date for prejudgment interest.
 
 
 [11]
 We granted en banc rehearing on six distinct but related appeals now before this court. One pair of related appeals (Nos. 01-15630 and 01-15653) concerns the merits of the district court's orders confirming the arbitration award. Another pair of related appeals (Nos. 01-16182 and 01-16528) concerns the district court's decisions with respect to prejudgment interest. The final pair of related appeals (Nos. 01-16392 and 01-16394) concerns the district court's awards of attorney fees. Pursuant to Kyocera's motion and by sua sponte order of the court, appeal Nos. 01-15630, 01-15653, 01-16182, and 01-16528 were consolidated, and appeal Nos. 01-16392 and 01-16394 were consolidated
 Although we took all of these consolidated cases en banc, we are concerned only with the merits of the district court's order confirming the arbitration award, and decline to consider the other appeals. See, e.g., Rand v. Rowland, 154 F.3d 952, 954 n. 1 (9th Cir. 1998) (en banc) (acknowledging the power of the en banc court to consider only some of the issues presented). We sever appeal Nos. 01-15630 and 01-15653 from appeal Nos. 01-16182 and 01-16528, and return Nos. 01-16182, 01-16528, 01-16392, and 01-16394 — the appeals concerning attorney fees and prejudgment interest — to the LaPine II panel for further proceedings consistent with this opinion.
 
 
 [12]
 In some cases, jurisprudential concerns may require a particular order. For example, if one of the two questions involves the construction of the constitution, and the other involves statutory interpretation, we normally start from a "fundamental and longstanding principle of judicial restraint [that] requires [us to] avoid reaching constitutional questions in advance of the necessity of deciding them."Lyng v. Northwest Indian Cemetery Protective Ass'n, [485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534] (1988). This principle means that "a decision on a constitutional question is appropriate only after addressing the statutory questions." United States v. Odom, 252 F.3d 1289, 1293(11th Cir.2001).
 United States v. Lamont, 330 F.3d 1249, 1251 (9th Cir.2003). On the other hand, in qualified immunity cases, the Supreme Court has instructed us, as a matter of judicial policy, that we must reach the constitutional question first. See Saucier v. Katz, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Finally, in other cases in which jurisdictional questions may exist, we are required to resolve those questions first. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (requiring that a court first address its own jurisdiction before deciding a case on the merits). None of these concerns affects our decision here.
 
 
 [13]
 Indeed, inWatkins, we followed, and implicitly sanctioned, a procedure that is in all relevant respects identical to the procedural course we follow in this case. In the 1983 Watkins I decision, a panel of our court resolved an issue and remanded to the district court for further proceedings, see Watkins v. United States Army, 721 F.2d 687 (9th Cir. 1983). After five years of ensuing litigation, the district court's disposition was appealed to another panel. See Watkins v. United States Army, 847 F.2d 1329, 1334 (9th Cir. 1988) [hereinafter Watkins II]. We reheard the case en banc and reversed Watkins I, rendering consideration of the questions resolved by Watkins II unnecessary. See Watkins, 875 F.2d at 704-05 (en banc).
 The Watkins en banc court looked past the most proximate panel decision, reversed the decision of an earlier panel, and reinstated a district court disposition rendered seven years before. Id. at 711. Here, we look past the proximate panel decision, reverse the decision of an earlier panel, and reinstate a district court disposition rendered eight years before. For all relevant purposes, the procedural histories of the two cases are identical.
 
 
 [14]
 Indeed, this case alone involves a quarter-billion dollar award
 
 
 [15]
 TheLaPine I majority suspected that maintaining the Federal Arbitration Act standard of review despite the contrary contractual wish of the parties would serve as a vehicle for courts to express substantive hostility to arbitration agreements. LaPine I, 130 F.3d at 889. We do not agree that preserving the speed and flexibility available in arbitration proceedings by adhering to Congress's chosen standard of review evinces hostility to the arbitration process; indeed, as mentioned above, it preserves precisely those attributes that its proponents cite as the benefits of arbitration.
 
 
 [16]
 One other circuit court and the Supreme Court both seem to have skirted the issue. The Second Circuit has allowed itself to be bound by a narrow standard of review contained in the parties' contract, but in its decision it did not directly address the propriety under federal law of doing soSee Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 14 F.3d 818, 821-23 (2d Cir.1994). In addition, the Supreme Court has, in dicta and in the ERISA context, suggested that parties might be able in some circumstances to contract for a narrower standard of review than that normally applied under federal common law. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 104-115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Firestone, however, is clearly distinguishable from this case. While ERISA does not specify any standard for federal court review of the actions at issue in Firestone, see id. at 109, 109 S.Ct. 948, the Federal Arbitration Act clearly enumerates the standard by which federal courts must abide. See 9 U.S.C. §§ 9-11. Moreover, the decision to contract for a narrower standard of review than the courts generally apply in the absence of a statutory command is a decision that may be less troublesome than the attempt to contract for a broader standard of review than that authorized by Congress, although we need not resolve that question here.
 
 
 [17]
 No party argues that the invalidity of the standard-of-review section should affect any portion of the contract other than the arbitration clause
 
 
 [18]
 Kyocera also contends that one term of the award should be corrected because it is "imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11(c). In the award, the arbitrators stated that LaPine and Prudential were jointly liable for $10,595,158 in lapsed payments for delivered disk drives; the arbitrators then deducted this amount as a setoff from the damages that Kyocera owed LaPine alone. Kyocera claims that it should be able to recover the damages from either LaPine or Prudential, and asks that the award be corrected accordingly
 Even if the alleged inconsistency represents an error, Kyocera has suffered no injury. The amount of the award against Kyocera, which the district court confirmed and which we now affirm, has already been reduced by the amount of the setoff. Kyocera has, effectively, already been "paid" the amount for which LaPine and Prudential were jointly liable. We therefore decline Kyocera's request to correct the award.
 RYMER, Circuit Judge, with whom TROTT, Circuit Judge, joins, in a separate statement.
 I would dismiss this rehearing en banc as improvidently granted because the parties have no interest in reconsidering LaPine I[1] and doing so has no effect on the outcome of this appeal.
 Neither party petitioned for rehearing en banc after LaPine I. Neither chose to present LaPine I for review, or to make any argument about LaPine I, or to ask for any relief from the rule in LaPine I, on the appeal in LaPine II that is the subject of this rehearing.[2] Cf. Fed. R.App. P. 28(5), (8), (9), (10).
 Both parties agree that LaPine I should not be overruled in this case. They said so in response to our request for supplemental briefing. Kyocera maintains that "[i]t is jurisprudentially inappropriate and manifestly unfair for the Court en banc to consider overruling LaPine I years after a decision became final and ... parties invested very significant resources obeying the mandate.... [S]ound reasons militate against disturbing that ruling now." Kyocera's Supplemental Brief at 13. LaPine's position is the same: "This case ... is not the right vehicle for it [overruling LaPine I]." LaPine's Supplemental Brief at 1. "The issue should be decided in a case where it is properly presented, and not merely advisory." Id. at 4.
 Nor is the outcome of this action affected by whether LaPine I is overruled. The three-judge panel in LaPine II affirmed the arbitration award under the more searching standard of review provided in the arbitration agreement. And nobody has suggested that any of the arbitrators' numerous findings of fact and conclusions of law were actually wrong under one standard of review but not the other, and would warrant reversal under the parties' agreed-to standard of review that was accepted in LaPine I but not under the standard that the court now adopts.[3]
 Under these circumstances, prudential concerns counsel against reaching this issue.
 To be clear, I do not question the en banc court's ability to overrule LaPine I. See, e.g., Jeffries v. Wood, 114 F.3d 1484, 1492 (9th Cir.1997) (en banc) (law of the case doesn't prevent an en banc court from overturning a preceding three-judge panel opinion). See also United States Nat'l Bank v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 446-48, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (court of appeals does not abuse its discretion by refusing to accept the parties' erroneous stipulation on a question of law). However, the question of whether we may do so is distinct from whether we should. And with regard to whether we should, it is important to me that the parties did not raise the merits of LaPine I on appeal in LaPine II, that the court has decided to proceed without benefit of argument, and that minimal opportunity for current input has been afforded despite the fact that there have been six years of real-world experience under the LaPine I regime. (It is not inconceivable that amici, for example, could have something insightful to offer.) At the least, a decision to reconsider LaPine I implicates the spirit of the case or controversy requirement, which rightfully recognizes that the judicial process functions best when supplied with "concrete adverseness" between the parties. See, e.g., Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); United States v. Johnson, 319 U.S. 302, 305, 63 S.Ct. 1075, 87 L.Ed. 1413 (1943) ("[T]he `honest and actual antagonistic assertion of rights' ... [is] a safeguard essential to the integrity of the judicial process, and one which we have held to be indispensable to adjudication....") (citations omitted). See also Arizonans for Official English v. Arizona, 520 U.S. 43, 71, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (reversing our decision in Yniguez v. Arizonans for Official English, 69 F.3d 920, 924 (9th Cir.1995), when the case lost its plaintiff, criticizing us for failing to "home in on the federal courts' lack of authority to act in friendly or feigned proceedings," and citing Johnson, 319 U.S. at 304, 63 S.Ct. 1075, for its admonition that "absent `a genuine adversary issue between ... parties,' [a] federal court `may not safely proceed to judgment'"). Granted, there is still a "controversy" between the parties in a technical sense, because no final judgment has been entered. But there is no controversy concerning the correctness of LaPine I.
 Whether LaPine I is correct or incorrect is not a slam dunk, either. Our colleagues Judge Kozinski and Judge Fernandez thought it was a proper rule; the court did not rehear that decision en banc; and there is a circuit split regardless of how we come out. Compare Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 292-93 (3d Cir.2001) (agreeing with LaPine I that private parties may contract for standard of review), and Gateway Techs., Inc. v. MCI Telecomm. Corp., 64 F.3d 993, 996-97 (5th Cir.1995) (same), with Bowen v. Amoco Pipeline Co., 254 F.3d 925, 933-34 (10th Cir.2001) (rejecting notion that private parties may contract for standard of review), and Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc., 935 F.2d 1501, 1504-05 (7th Cir.1991) (same in dicta).
 Even the Supreme Court lets go of a case when it recognizes that a decision on the issue on which certiorari was granted won't make any difference to the parties. For instance, in DeBacker v. Brainard, 396 U.S. 28, 90 S.Ct. 163, 24 L.Ed.2d 148 (1969), the Supreme Court noted probable jurisdiction, ordered briefing, and scheduled argument regarding a Nebraska juvenile's challenge to the use of a "preponderance of the evidence" standard in state juvenile courts. However, during oral argument, the juvenile's attorney conceded that his client would have lost "[n]o matter what the standard was ... [o]ur evidence just isn't sufficient." Id. at 31, 90 S.Ct. 163. Given this, the Court concluded that the case was no longer "an appropriate vehicle for consideration of the standard of proof in juvenile proceedings," id., and "dismiss[ed] such writ as improvidently granted." Id. at 33, 90 S.Ct. 163. Likewise, in Ticor Title Insurance Co. v. Brown, 511 U.S. 117, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994), the Court granted certiorari to decide whether a federal court may refuse to enforce a federal class action judgment on the ground that absent class members have a constitutional due process right to opt out. Id. at 120-21, 114 S.Ct. 1359. After granting certiorari, the Court discovered that the district court had already held that absent class members had a right to opt out under the Federal Rules of Civil Procedure, and that this Rules-based holding was binding on the parties under res judicata principles. Id. at 121, 114 S.Ct. 1359. Consequently, the Court dismissed its writ of certiorari as improvidently granted on the ground that "it is not clear that our resolution of the constitutional question will make any difference even to these litigants." Id. at 122, 114 S.Ct. 1359. See also Smith v. Butler, 366 U.S. 161, 161, 81 S.Ct. 937, 6 L.Ed.2d 184 (1961) (dismissing writ of certiorari as improvidently granted on the ground that "[a]fter full argument and due consideration, it became manifest that the course of the litigation ... did not turn on the issue on the basis of which certiorari was granted"). Cf. United States v. Cusumano, 83 F.3d 1247, 1249 n. 1, 1250 (10th Cir.1996) (en banc) (refusing to decide, on rehearing en banc, whether the warrantless use of a thermal imager to scan a defendant's residence violates the Fourth Amendment despite the fact that rehearing en banc was initially granted to resolve this exact issue, "because any such decision is unnecessary to a resolution of Defendants' appeals. Any decision we might reach on that question would not alter the outcome of these appeals.").
 We should let this issue go, too. No one knows for sure why a majority of the active judges voted for rehearing en banc. Even if it were because they believed that the correctness of LaPine I was a "question of exceptional importance" — the only criterion for taking a case en banc under FRAP 35(a) that is possibly relevant here — this cannot still be so in this case in light of Kyocera's and LaPine's concession that they don't care about LaPine I and that LaPine I doesn't affect the outcome of the controversy between them in LaPine II. Cf. Ticor Title, 511 U.S. at 122, 114 S.Ct. 1359(issue no longer certworthy when "as matters ... develop[] it is not clear that our resolution of the [issue] will make any difference even to these litigants"). Cf. also Rogers v. Missouri Pac. R.R. Co., 352 U.S. 521, 527-28, 77 S.Ct. 459, 1 L.Ed.2d 515 (1957) (Frankfurter, J., dissenting) ("The course of argument and the briefs on the merits may disclose that a case appearing on the surface to warrant a writ of certiorari does not warrant it...."). In any event, even if the issue was and is exceptionally important, I do not believe it is so exceptionally important that it justifies deciding it in a vacuum — particularly when the issue is not dispositive, does not matter to the parties, was not identified as an issue on appeal, was not thoroughly vented in oral or written argument, is not inconsistent with Ninth Circuit precedent, and does not resolve a circuit split.
 I would, therefore, dismiss this proceeding as improvidently granted, leaving the question of whether to overrule LaPine I for the day, if it ever comes, when parties who are invested in the rule argue its pros and cons, and for the case, if it ever comes, when it matters whether LaPine I stands or falls.
 Notes:
 
 
 [1]
 LaPine Tech. Corp. v. Kyocera Corp., 130 F.3d 884 (9th Cir.1997) (LaPine I).
 
 
 [2]
 The parties did file supplemental briefs pursuant to a court order (issued after we had taken the case en banc) to address "(1) whether a contract between private parties may bind a federal court to apply a different or less deferential standard of review than the standard specified in the Federal Arbitration Act; (2) whether it is appropriate for the court to reach that substantive issue in the circumstances of this case...." However, their discussion ofLaPine I is abbreviated and unhelpful, no doubt because the parties themselves have spent a ton of money, and six years of time and effort, in reliance upon it and couldn't care less about it now.
 
 
 [3]
 For this reason I cannot understand the basis for the court's statement that "[t]he issue is dispositive of the case." Op. at 995. An issue is not "dispositive" if it couldpossibly or hypothetically matter to the outcome; it is dispositive only if it actually matters. As the opinion shows on its face, the standard of review doesn't actually matter to anything.